```
                UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF INDIANA
                     SOUTH BEND DIVISION
```

MARIA HAMILTON and DAMON L.        )
WRIGHT, on behalf of themselves and )
all others similarly situated,      )
                                    )
            Plaintiff,              )
                                    )
      vs.                           )     CAUSE NO: 3:05-CV-434RM
                                    )
AMERICAN CORRECTIVE                 )
COUNSELING SERVICES, INC., et al.,  )
                                    )
            Defendants.             )

## OPINION AND ORDER

Maria Hamilton and Damon Wright, on behalf of themselves and all others similarly situated, sue American Corrective Counseling Services and its affiliates (referred to collectively as American Corrective in this opinion), alleging that certain practices associated with a bad check diversion program violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment, as well as the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* The plaintiffs also bring claims under Indiana law for conversion, fraudulent misrepresentation, and negligent misrepresentation. The matter is before the court on American Corrective's motion for partial judgment on the pleadings, and for the reasons that follow, the court grants the motion in part and denies it in part.

The court applies the same standard in considering a motion for judgment on the pleadings under FED. R. CIV. P. 12(c) as a motion to dismiss for failure to state a claim under Rule 12(b)(6). Forseth v. Village of Sussex, 199 F.3d 363, 368

n.6 (7th Cir. 2000). Both motions challenge the complaint's sufficiency, not its underlying merits, Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 452 (7th Cir. 1998), and the court accepts all well-pleaded allegations in the petition as true and draws all reasonable inferences in the plaintiffs' favor. Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Medical School, 167 F.3d 1170, 1173 (7th Cir.1999). Rule 12(c) motions are granted "only when it appears beyond a doubt that the plaintiff[s] cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." Brunt v. Serv. Employees Intern. Union, 284 F.3d 715, 718-719 (7th Cir. 2002). If documents attached to the complaint contradict allegations in the complaint, the documents trump the allegations. Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d at 454. "In fact, '[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.' " Id. at 455. The plaintiffs have attached several documents to the complaint, including the contract between American Corrective and the St. Joseph County prosecutor's office, as well as several collection letters, so the court considers those documents in ruling on the defendant's motion. Id.

  The court takes the following facts from the first amended complaint except where an attached exhibit contradicts the allegations contained in the complaint. They are recited only for purposes of resolving this motion and are taken in the light most favorable to the plaintiffs as legally possible.

The St. Joseph County Prosecuting Attorney's Office has contracted with American Corrective to operate a check collection program known as the St. Joseph County Bad Check Restitution Program. The program is intended to give first time offenders the opportunity to avoid criminal prosecution, provided that they participate in an educational seminar addressing the causes and prevention of writing bad checks. Under to the agreement, American Corrective conducts these seminars, but the prosecutor's office determines the prerequisites and fees for the program.

Participants can avoid prosecution by completing the seminar and paying the check amount, protest and service fees totaling $62.50, and a program fee of $160. The diversion process is triggered when participating merchants file a bad check crime report with the program; the report doesn't allege that the check writer knew the check wouldn't be paid or honored. Upon receiving a report, American Corrective sends the potential program participant a written notice concerning program participation. The prosecuting attorney approves in advance the format, content, and frequency of such communications.

The initial letter provides:

> The St. Joseph County Prosecuting Attorney's Office has received a CRIME REPORT alleging a violation of Indiana Criminal Code 35-43-5-5 or 35-43-4-2: issuing an insufficient Fund or No Account Check.
>
> YOU MAY AVOID A COURT APPEARANCE if you agree to enroll in the St. Joseph County Prosecuting Attorney's Bad Check Restitution Program.

The letter states that the program is optional. It explains that the prosecutor's office "will agree to refrain from initiating prosecution," but a "failure to respond may result in criminal charges by the prosecuting attorney." Check writers who believe they have received the letter in error are told to contact the prosecutor's office. The recipients are also given notice of their right to be notified by the complaining merchant. Check writers who want to contest the allegations are told they may appear in court and should contact the prosecutor's office about contesting the allegation; they are also advised to consult an attorney. Recipients who don't respond to the initial letter receive additional letters offering enrollment in the program and giving notice of the consequences of not responding.

## ABSTENTION

American Corrective seeks dismissal of the plaintiffs' § 1983 claims on the ground that the court should abstain from exercising jurisdiction under the doctrine of Younger v. Harris, 401 U.S. 37(1971), so the court first determines whether abstention is required before addressing the merits. *See* Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 817 n.22 (1976) ("Where a case is properly within this category of cases [Younger], there is no discretion to grant injunctive relief."); Green v. Benden, 281 F.3d 661, 666 (7th Cir. 2002) ("We do not reach the merits of Dr. Green's challenge to the denial of his request for injunctive relief because we agree with the Illinois Defendants that the district court should have abstained . . .."). The plaintiffs seek to enjoin permanently the bad-check

4

program's operation. The Younger abstention doctrine requires federal courts to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances exist which would make abstention inappropriate. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).

State proceedings that are judicial in nature for purposes of Younger abstention include criminal proceedings, civil proceedings that are criminal in nature and implicate important state interests, and administrative proceedings that are quasi-judicial in nature. Ohio Civil Rights Com'n v. Dayton Christian Schools, Inc., 477 U.S. 619, 626-627 (1986). American Corrective doesn't contend there is such a state proceeding pending against the named defendants, so the application Younger abstention isn't warranted. Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992); New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350, 369-370 (1989). American Corrective says there are pending criminal proceedings against potential putative class members, but nothing in the record at this point supports that proposition, so the court cannot say American Corrective has carried its burden of showing a pending state court proceeding that implicates an important state interest with which this case will interfere. Trainor v. Hernandez, 431 U.S. 434, 448 (1977) (Blackmun, J., concurring) ("Consistently with this requirement of balancing the federal and state interests, the Court in previous Younger cases has imposed a requirement that

5

the State must show that it has an important interest to vindicate in its own courts before the federal court must refrain from exercising otherwise proper federal jurisdiction."); In re Dairy Mart Convenience Stores, Inc., 411 F.3d 367, 373 (2nd Cir. 2005); Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1242 (10th Cir. 2002).[1]

Still, the defendants say the consideration of federalism dictates abstention because the plaintiff seeks to enjoin "those in charge of an executive branch of an agency of state or local governments." Rizzo v. Goode, 423 U.S. 362, 380 (1976). The court isn't persuaded that Rizzo v. Goode, or the principles of federalism, require it to abstain. The court reads the holding in Rizzo v. Goode more narrowly. Rizzo v. Goode "actually holds that a federal court should refrain from assuming a comprehensive supervisory role via its injunctive powers over broad areas of local government for the purpose of preventing speculative and probably only sporadic future misconduct by local officials toward an imprecise class of potential victims, especially when that misconduct is not part of a pattern of persistent and deliberate official policy." Campbell v. McGruder, 580 F.2d 521, 526 (D.C. Cir. 1978).

Abstention from the exercise of federal jurisdiction is the exception, not the rule. County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-189 (1959). But "[i]n exercising their equitable powers federal courts must recognize '[the]

---

[1] The plaintiffs have the ultimate burden of showing "that state procedural law barred presentation of [its] claims." Moore v. Sims, 442 U.S. 415, 432 (1979).

special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.' " City of Los Angeles v. Lyons, 461 U.S. 95, 112 (1983) (quoting Stefanelli v. Minard, 342 U.S. 117, 120 (1951)). The court cannot characterize the enjoinment of the bad-check program as exercising a comprehensive supervisory role over the prosecutor's office. Significantly, the plaintiffs don't seek to enjoin the prosecution of bad-check writers or the methods by which violators are prosecuted; they seek only to enjoin the use of a pre-charge diversion program. The plaintiffs' alleged constitutional violations also aren't speculative, and abstention generally isn't favored in civil rights cases brought under § 1983. Mayor of Philadelphia v. Educational Equality League, 415 U.S. 605, 628 (1974).

The county has a legitimate interest in preventing bad-checks, and arguably this program helps minimize the administrative and judicial costs associated with statutory enforcement, but when this interest is weighed against the court's duty to adjudicate a controversy properly before it, the court can't find abstention is warranted. *See, e.g.,* Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11 (1987) (abstention under Younger is appropriate only "if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government.").

THE PLAINTIFFS' § 1983 CLAIMS

7

American Corrective moves to dismiss the plaintiffs' procedural and substantive due process and equal protection claims brought pursuant § 1983 because they say the plaintiffs haven't alleged a constitutional violation. To state a claim under § 1983, a plaintiff must allege that the defendant deprived him of a right secured by the Constitution or laws of the United States, and that the defendant acted under color of state law. 42 U.S.C.A. § 1983; Jones v. Wilhelm, 425 F.3d 455, 465 (7th Cir. 2005).[2]

"To demonstrate a procedural due process violation, the plaintiffs must establish that there is '(1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process.' " Hudson v. City of Chicago, 374 F.3d 554, 559 (7th Cir. 2004) (quoting Buttitta v. City of Chicago, 9 F.3d 1198, 1201 (7th Cir.1993)). The parties don't dispute that a person's money is a property interest protected by due process. *See* Board of Regents of State Colleges v. Roth, 408 U.S. 564, 572 (1972). At issue is whether the defendants have deprived them of that interest without due process of law.

The plaintiffs say the diversion program violates due process because it doesn't provide check writers with a meaningful opportunity to challenge the deprivation of their property. The court cannot agree. Check writers who receive a letter of notice are given two options: (1) enroll in the program and pay the check amount plus program fees, or (2) not enroll in the program and face the possibility

---

[2] American Corrective hasn't denied for purposes of this motion that it was acting under color of state law, so it is treated the same as a municipality for purpose of § 1983. *See* Woodward v. Correctional Medical Services of Illinois, Inc., 368 F.3d 917, 927 n.1 (7th Cir. 2004).

8

of a criminal proceeding conducted in accordance with due process. Recipients who choose to enroll in the program can be said to make restitution voluntarily, so no government action has deprived them of a property interest. *See* Herrada v. City of Detroit, 275 F.3d 553, 556-557 (6th Cir. 2001) (citing Garcia v. City of Albuquerque, 232 F.3d 760, 770 (10th Cir. 2000); Hargray v. City of Hallandale, 57 F.3d 1560, 1567 (11th Cir. 1995); Weller v. Department of Social Services for City of Baltimore, 901 F.2d 387, 393 (4th Cir. 1990).

Still, the plaintiffs say American Corrective deprived them of their property interest because the false and misleading statements in the letters they received, as well as statements made to check-writers who called American Corrective, induced them to enroll in the program. *See* Spreen v. Brey, 961 F.2d 109, 112 (7th Cir. 1992) (citing Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982) (the "question of coercion by the state resulting in a deprivation of procedural rights may best be analogized to those cases in which a government employee seeks procedural review of his or her resignation as a 'discharge' coerced by the actions of the federal government.")); Hargray v. City of Hallandale, 57 F.3d at 1568 (addressing whether resignation from employment was involuntary and therefore a deprivation of a property interest within the meaning of due process). American Corrective says the plaintiffs haven't been deprived of a property interest because the notices aren't false and misleading. The court needn't determine this point, because regardless of the option a check-writer selects, the writer receives sufficient process even if the court assumes that they have been deprived of their

property. *See* Silvernail v. County of Kent, 385 F.3d 601, 604 (6th Cir. 2004); *see also* Horn v. City of Chicago, 860 F.2d 700, 704-705 (7th Cir. 1988); Herrada v. City of Detroit, 275 F.3d at 557; Gradisher v. County of Muskegon, 255 F. Supp.2d 720, 731 (W.D. Mich. 2003).

Notice and an opportunity to be heard are the essential elements of due process. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985). Due process is a flexible concept, and the process required is context specific. Zinermon v. Burch, 494 U.S. 113, 127 (1990). A court deciding what process is due in a given setting must consider the nature of the private interest, the risk of an erroneous deprivation under the procedures in place and the value of any additional procedural safeguards, and the government's interest, including the administrative burdens additional safeguards would impose. Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

The bad check diversion program provides sufficient notice and a meaningful opportunity to be heard. The letters tell the recipient check-writer that the prosecutor's office has received a criminal report alleging a violation of Indiana's bad-check statute, and that the recipient may be subject to criminal court proceedings. The letters explain that the bad-check diversion program is optional: check writers can avoid prosecution by enrolling in the program or "if [they] want to contest this action and appear in court, [they] may want to consult an attorney." They are instructed to "[c]ontact this office and inform us of your decision." The letters also provide a phone number and invite recipients to

informally dispute the receipt of the letters based upon a mistake, improper notice, or a previous payment to the complaining merchant. These statements are constitutionally sufficient because they are reasonably calculated to communicate the allegations against the recipient, the future actions the County may take, and the procedures for contesting such allegations. *See* Horn v. City of Chicago, 860 F.2d at 705; Silvernail v. County of Kent, 385 F.3d at 604-605. Recipients who choose to formally contest the allegation are provided "the full panoply of due process protections when and if the County instituted a criminal action to collect the fee." Silvernail v. County of Kent, 385 F.3d at 605.

The interest at issue is relatively minimal in comparison to other cases—the amount of the check plus about $220 in fees—*cf.* Memphis Light, Gas and Water Div. v. Craft, 436 U.S. 1, 11 (1978), (the plaintiffs stood to lose their electricity); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 543 (the plaintiffs stood to lose "a significant private interest in retaining employment" or "means of livelihood"), so the court doesn't find that greater protection is required. Nor is there any indication that additional procedural safeguards would reduce the risk of erroneous deprivation: the letters already provide an informal means of addressing mistakes and inform the recipients of their right to receive notice of the bad check from the complaining merchant. *See* Silvernail v. County of Kent, 385 F.3d at 605. Finally, the County has a legitimate interest in resolving bad check complaints without draining judicial resources and minimizing the administrative costs

11

associated with such violations. Id. Balancing these interests, the process provided by the bad-check program is constitutionally sufficient.[3]

The plaintiffs also allege American Corrective has deprived them of their property without due process because American Corrective has "a substantial financial interest in maintaining a high rate of collections." In support of their argument, the plaintiffs cite Tummey v. Ohio, 273 U.S. 510, 523 (1927), a case that stands for the proposition that due process requires that a criminal defendant receive a judge without a direct, personal, substantial pecuniary interest in the outcome of a case. The requirement of a neutral decision maker has be expanded to individuals whose property interests are affected. *See, e.g.,* Wilson v. City of New Orleans, 479 So.2d 891, 893 (La. 1985).

In Wilson v. City of New Orleans, the City contracted with a private company for the collection of parking tickets on a contingent fee basis. When alleged parking violators failed to pay their ticket, the company would provide them with

---

[3] The plaintiffs take issue with statements American Corrective employees allegedly made about the recipient's potential criminal liability. These statements, however, assuming they were made, don't impact the sufficiency of the notice or the process provided by the program, because they don't contradict the letters that clearly state that the recipients can contest the allegations in court. The plaintiffs allege that callers who contact American Corrective about the program are told they must enroll in the program to avoid prosecution, even if the recipient tells the operator they didn't know their check would bounce. There is nothing false about this statement since criminal prosecution is a real possibility under Indiana's bad-check statute which provides, "The fact that a person issued or delivered a check ... which was refused by the drawee, constitutes prima facie evidence that the person knew that it would not be paid..." INDIANA CODE § 35-43-5-5(c). Unlike many of the employment cases the plaintiffs cite, they don't allege that callers were presented with false options for contesting the deprivation. *Cf.* Spreen v. Brey, 961 F.2d at 111(plaintiff employee told she could either resign or be involuntarily terminated). Callers aren't told they can't contest the allegations in a criminal proceeding; rather, check writers who want to raise the defense of bona fide mistake can choose the option of a criminal proceeding, the procedures for which are provided in the letter.

12

several notices; cars that accumulated enough notices or tickets were subject to "booting." The City and the corporation informally agreed upon the grounds for immobilization, and those who wanted to challenge the immobilization of their vehicle could do so only after posting a cash bond. The court found "the City's procedure for deciding that a person should be deprived of the use of his automobile [fell] short of due process requirements" because "[t]he immobilization scheme [didn't] provide for a neutral decision maker to decide whether a vehicle owner should be classed as a scofflaw and targeted for booting, notice to an owner that such action is about to be taken against him, or an opportunity to respond at least informally to a summary of adverse evidence." Id. at 899.

This case differs from Wilson v. City of New Orleans because there is no allegation that the plaintiffs were denied a neutral decision in the deprivation of their property. While American Corrective has a financial interest in restitution paid by program participants under its contract with the County, American Corrective's role in the collection scheme was to provide seminars and notice of the procedures under which a check-writer could contest the deprivation before a neutral decision maker. Unlike the situation in Wilson v. City of New Orleans, the contract with the County doesn't provide American Corrective any authority to deprive the check writers of their property. Recipients who don't participate in the program face the possibility of being subject to a criminal proceeding, and the plaintiffs don't allege American Corrective acts as the judge in those proceedings.

13

American Corrective's financial interest in the collection process does not violate due process.

The plaintiffs cannot prove any facts consistent with the complaint and its attachments that show they were denied constitutionally sufficient process, so they haven't stated a claim for which relief can be granted. The defendant's motion to dismiss the plaintiffs' due process claim is granted.

The complaint also alleges American Corrective has violated their substantive due process rights, but their response to the motion for judgment on the pleadings doesn't address the propriety or existence of such a claim. Both the Supreme Court and the court of appeals have "emphasized how limited the scope of the substantive due process doctrine is." Lee v. City of Chicago, 330 F.3d 456, 467 (7th Cir. 2003) (quoting Dunn v. Fairfield Cmty. High Sch. Dist. No. 225, 158 F.3d 962, 965 (7th Cir. 1998)); *see also* Washington v. Glucksberg, 521 U.S. 702, 720-721 (1997). "Substantive due process is not 'a blanket protection against unjustifiable interferences with property.'" Lee v. City of Chicago 300 F.3d at 467 (quoting Schroeder v. City of Chicago, 927 F.2d 957, 961 (7th Cir. 1991). "Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." Id. If a substantive due process challenge involves only the deprivation of a property interest, as here, "a plaintiff must show 'either the inadequacy of state law remedies or an independent constitutional violation'

14

before the court will even engage in this deferential rational-basis review." Id. (quoting Doherty v. City of Chicago, 75 F.3d 318, 323-26 (7th Cir.1996)).

The plaintiffs' substantive due process claim doesn't implicate a fundamental right and involves only the deprivation of a property interest, so the plaintiffs must show as an initial matter that either the state-law remedies are inadequate or that an independent constitutional right have been violated. Like the plaintiff in Lee v. City of Chicago, the plaintiffs cannot make either showing. *See* Lee v. Chicago, 330 F.3d at 467 (dismissing plaintiff's substantive due process challenge to the city requiring him to pay towing and storage fees for his vehicle, which was impounded for evidentiary purposes because he couldn't "state a claim under the Fourth Amendment. And far from alleging the inadequacy of state-law remedies, Lee has asserted pendant state-law claims for bailment, trespass, and wrongful conversion."). As already discussed, the plaintiffs haven't stated a claim under procedural due process, and given that they allege state law claims for conversion and misrepresentation, they haven't sufficiently alleged an inadequacy in state law remedies.

The plaintiffs allege the bad-check program violates equal protection because the program extracts fees from alleged violators under the threat of prosecution without regard to their ability to pay.[4] American Corrective argues the

---

[4] The plaintiffs allege that both the Equal Protection and Due Process Clause have been violated because "in the Court's Griffin-line cases, 'due process and equal protection principles converge.' " *See*  M.L.B. v. S.L.J., 519 U.S. 102, 120 (1996). The plaintiffs' claim addresses the denial of a benefit solely on the inability to pay costs, so the court analyzes the claim within the equal protection context. Id.

15

plaintiffs lack standing to bring an equal protection claim based on indigence, so the court first determines if it has jurisdiction. *See* Kochert v. Greater Lafayette Health Services, Inc., 463 F.3d 710, 714 (7th Cir. 2006); *see also* Northeastern Florida Chapter of Associated General Contractors of America, 508 U.S. 656, 663 (1993) ("The doctrine of standing is 'an essential and unchanging part of the case-or-controversy requirement of Article III...' ")(quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

All that is required to demonstrate Article III standing is "injury in fact plus redressability." Kochert v. Greater Lafayette Health Services, Inc., 463 F.3d at 714 (citing U.S. Gypsum Co. v. Indiana Gas Co., Inc., 350 F.3d 623, 627 (7th Cir. 2003)). American Corrective says the complaint doesn't sufficiently allege that the plaintiffs' indigence prevented participation in the program. The court doesn't agree. The complaint alleges equal protection has been violated by conditioning the avoidance of prosecution on the payment of fees, without regard to the ability to pay. This allegation puts American Corrective on notice that the plaintiffs believe they have been denied equal treatment because of their financial status, which is sufficient in equal protection cases: "When the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing. The 'injury in fact' in an equal protection case of this variety is the denial of equal treatment resulting from the

16

imposition of the barrier, not the ultimate inability to obtain the benefit." Northeastern Florida Chapter of Associated General Contractors of America, 508 U.S. 656, 666 (1993).

Equal protection requires that the "access to judicial processes in cases criminal or 'quasi-criminal in nature' " not turn on ability to pay. M.L.B. v. S.L.J., 519 U.S. at 124 (citing Griffin v. Illinois, 351 U.S. 12, 19 (1956)). In support of their argument, the plaintiffs rely on Mueller v. State, 837 N.E.2d 198, 204 (Ind. App. 2005), and Moody v. State, 716 So.2d 562, 563-564 (Miss. 1998), two cases which applied the "access to judicial processes" principle to find a pre-trial diversion program for criminal defendants violated equal protection. These cases don't persuade the court that the diversion program in this case violates the Equal Protection Clause.

In Griffin v. Illinois and its lineage, the Supreme Court has invalidated state laws that prevent an indigent criminal defendant from acquiring a transcript for use at several stages of the trial and appeal process.[5] The Court has applied and extended the "access to judicial processes" principle to protect numerous rights of indigents in criminal proceedings. *See* Smith v. Bennett, 365 U.S. 708 (1961) (indigent prisoner cannot be deprived of a direct criminal appeal or habeas

---

[5] *See e.g.*, Eskridge v. Washington State Board of Prison Terms & Paroles, 357 U.S. 214 (1958); Burns v. Ohio, 360 U.S. 252 (1959); Smith v. Bennett, 365 U.S. 708 (1961); Coppedge v. United States, 369 U.S. 438 (1962); Lane v. Brown, 372 U.S. 477 (1963); Draper v. Washington, 372 U.S. 487 (1963); Rinaldi v. Yeager, 384 U.S. 305 (1966); Long v. District Court of Iowa, 385 U.S. 192 (1966); Roberts v. LaVallee, 389 U.S. 40 (1967); Gardner v. California, 393 U.S. 367(1969); Williams v. Oklahoma City, 395 U.S. 458 (1969); Mayer v. City of Chicago, 404 U.S. 189 (1971).

17

petition because of his inability to pay docketing fees); Douglas v. California, 372 U.S. 353 (1963) (establishing that an indigent defendant has the right to court-appointed counsel on direct appeal); Williams v. Illinois, 399 U.S. 235 (1970) (invalidating criminal penalties that subjected indigents to incarceration because of their inability to pay a fine). The reasoning in the Griffin v. Illinois line of cases is based upon indigents' right to have an adequate opportunity to present their case fairly within the adversary system. *See* Griffin v. Illinois, 351 U.S. at 19 ("There can be no equal justice where the kind of trial a man gets depends on the amount of money he has.); M.L.B.v. S.L.J., 519 U.S. at 113; Lewis v. Casey, 518 U.S. 343, 378 (1997) (Thomas, J., concurring); Ross v. Moffitt,417 U.S. 600, 612 (1974).

The plaintiffs, however, don't allege their financial status has denied them access to the judicial process for purposes of presenting their case. Instead, they say they've been denied the opportunity to avoid the judicial process altogether because they can't pay the program fees. This distinction is significant because "[t]he duty of the State under [Griffin v. Illinois equal protection line of] cases is ... only to assure the indigent defendant an adequate opportunity to present his claims fairly..." Ross v. Moffitt,  417 U.S. at 616.

In Mueller v. State and Moody v. State, the indigent party in those cases had been charged with a crime. The Muller court held that "[c]ompletely foreclosing a benefit that the State offers to defendants in the criminal justice system, based solely on an inability to pay a fee or fine, violates the Fourteenth Amendment."

Mueller v. State, 837 N.E.2d at 204. The right to enter into a plea agreement arguably is a benefit that assures an adequate opportunity to present one's case, so the court accepts this proposition. But the potential program participants in this case haven't become subject to a criminal proceeding "by way of formal charge, preliminary hearing, indictment, information, or arraignment." *See, e.g.,* U.S. v. Spruill, 296 F.3d 580, 585 (7th Cir. 2002) (defining the initiation of criminal proceedings for purposes of the 6th Amendment). The plaintiffs claim deprivation of a benefit that isn't part of the judicial process. *See, e.g.,* Pennsylvania v. Finley, 481 U.S. 551, 556 (1981) (finding the limitations on equal protection have even more force when dealing with a benefit that is not part of a criminal proceeding, such as post conviction habeas relief).

Outside the criminal justice arena, equal protection "does not require absolute equality or precisely equal advantages." San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 24 (1973). The court applies a rational justification test to determine if the bad check program violates equal protection. M.L.B. v. S.L.J., 519 U.S. at 115-116; Ortwein v. Schwab 410 U.S. 656, 660 (1973) (rational justification standard applied to determine if filling fee violated equal protection by discriminating against indigent welfare recipients). Because the plaintiffs haven't alleged any facts or made any allegation that the program fee has no rational basis, they haven't stated a claim for which relief can be granted. Wroblewski v. City of Washburn, 965 F.2d 452, 460 (7th Cir. 1992) ("To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts

19

sufficient to overcome the presumption of rationality that applies to government classifications."). The defendant's motion to dismiss the plaintiffs' equal protection claim is granted.

For the foregoing reasons, the court GRANTS IN PART AND DENIES IN PART the defendant's motion for partial judgment on the pleadings [Doc. No. 74]. The motion is GRANTED with respect to the plaintiffs' due process and equal protection claims. The motion is DENIED to the extent the defendant asks the court to abstain from exercising jurisdiction.

SO ORDERED.

Entered:  November 14, 2006

                               /s/ Robert L. Miller, Jr.
                               Chief Judge
                               United States District Court