UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| MARIA HAMILTON and DAMON L. WRIGHT, on behalf of themselves and all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | CAUSE NO: 3:05-CV-434RM |
| | ) | |
| AMERICAN CORRECTIVE COUNSELING SERVICES, INC., et al., | ) ) | |
| | ) | |
| Defendants | ) | |

OPINION AND ORDER

Maria Hamilton and Damon Wright sue American Corrective Counseling Services and its affiliates (collectively referred to as American Corrective in this opinion) alleging certain practices associated with a bad-check diversion program violate the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* The plaintiffs also bring claims under Indiana law for conversion, fraudulent misrepresentation, and negligent misrepresentation. They now seek certification of a class of Hoosiers who received one of several form collection letters from American Corrective regarding the diversion program.[1]

To maintain a class action, the plaintiffs and each class they wish to represent must meet the requirements under Fed. R. Civ. P. 23. First, the

---

[1] The plaintiffs' Equal Protection and Due Process claims were dismissed on the pleadings, so the court needn't determine if these claims can be certified. *See, e.g.,* Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1169-1170 (3d Cir. 1987) (finding no error in district court's refusal to consider class certification before determining whether the named plaintiff had a cause of action).

proposed class action must satisfy all four elements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Second, the action must be maintainable under at least one of the three provisions under Rule 23(b). A district court must conduct a rigorous inquiry into the propriety of proceeding as a class before certifying. Livingston v. Associates Finance, Inc., 339 F.3d 553, 558 (7th Cir. 2003). The plaintiffs have the burden of demonstrating that they satisfy the class certification prerequisites. Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993).

FDCPA CLAIM

The plaintiffs say American Corrective violated the FDCPA by using false, deceptive, or misleading representations in collecting a debt. They seek a permanent injunction barring American Corrective from continuing its current collection methods, declaratory relief that the collection letters violate the FDCPA, and statutory and actual damages under the FDCPA. They seek certification of an FDCPA class defined as:

> All persons in the state of Indiana who (i) were sent a letter or letters by Defendants (Exhibits B-Q) purporting to be from an Indiana governmental Bad Check Restitution Program (ii) in an attempt to recover a dishonored check (iii) which, according to the nature of the creditor or the debt, or the records of the payee or Defendants, was written for personal, family, or household purposes, (iv) which was not returned as undelivered by the U.S. Post Office, (v) during the one year prior to the filing of the complaint through the date of class certification and (vi) paid money to Defendants.

2

American Corrective doesn't contest that the plaintiffs and the proposed FDCPA class satisfy the requirements of Rule 23(a), but the court still conducts its own review. *See, e.g.*, Gammon v. GC Services Ltd. Partnership, 162 F.R.D. 313, 317 (N.D. Ill.1995) (defendant didn't contest three of the Rule 23(a) requirements and the court's "own independent review" confirmed that those requirements were satisfied).

The proposed class likely consists of more than 10,000 individuals who wrote checks that American Corrective processed between 2003 and 2005, so it is "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). That American Corrective sent the same standard debt collection letters to all members of the proposed class is sufficient to show a "common nucleus of operative fact," so the plaintiffs' claim satisfies commonality. Gammon v. GC Services Ltd. Partnership, 162 F.R.D. at 317 n.4 (citing Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992)). The typicality requirement is also met because the plaintiffs' claim rests on the theory that American Correctives's collection letters violate the FDCPA; the claim therefore arises "from the same event or practice or course of conduct that gives rise to the claims of other class members and [is] based on the same legal theory." Id. (citing De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983)). Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This means (1) the chosen class representatives cannot have antagonistic or conflicting claims with other members of the class, Rosario v.

3

<u>Livaditis</u>, 963 F.2d at 1018, and (2) the class representatives must be willing and able to "vigorously pursue the litigation on behalf of the class," and the attorneys they have chosen to represent the class must be "qualified, experienced and able to conduct the litigation." <u>Scholes v. Stone, McGuire & Benjamin</u>, 143 F.R.D. 181, 186 (N.D. Ill. 1992) (citing <u>Secretary of Labor v. Fitzsimmons</u>, 805 F.2d 682, 697 (7th Cir.1986)). Nothing in record before the court suggests that either the named representatives or their counsel don't adequately represent the proposed class.

Next, the court must decide which form of class action, if any, is appropriate under Rule 23(b). <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 163 (1974). The plaintiffs seek to certify a class pursuant to Rule 23(b)(2) and Rule 23(b)(3), and in the alternative, a divided certification where the court would resolve liability under the procedures of 23(b)(2) and damages utilizing the "opt out" procedures under 23(b)(3).

A court may certify a class under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV .P. 23(b)(2). Because the plaintiffs request both declaratory and monetary relief, the class is properly certified under Rule 23(b)(2) only if the request for declaratory relief predominates over the request for monetary relief. <u>Lemon v. International Union of Operating Engineers, Local No. 139</u>, 216 F.3d 577, 580-581 (7th Cir. 2000). That is, the court must determine if the requested monetary damages are "incidental" to the

4

requested declaratory relief. <u>Jefferson v. Ingersoll International Inc.</u>, 195 F.3d 894, 899 (7th Cir. 1999). Incidental damages are those "that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." <u>Lemon v. International Union of Operating Engineers, Local No. 139</u>, 216 F.3d at 581(quoting <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402, 415 (5th Cir. 1998)). Incidental damages, therefore, don't depend "in any significant way on the intangible, subjective differences of each class member's circumstances" and do not "require additional hearings to resolve the disparate merits of each individual's case." <u>Id.</u> The court cannot say the monetary relief sought in this case is incidental.

Statutory damages under the FDCPA require only a showing that the statute was violated, so when the monetary relief sought by the class is statutory, it can be determined by declaring the uniform actions of the defendant in violation of the FDCPA and calculating the statutory percentage on a class-wide basis. *See, e.g.,* <u>Gammon v. GC Services Ltd. Partnership</u>, 162 F.R.D. at 321. But to obtain actual damages under the FDCPA, a plaintiff must present proof of the actual harm suffered. <u>Bartlett v. Heibl</u>, 128 F.3d 497, 499 (7th Cir. 1997); <u>Wantz v. Experian Info. Solutions</u>, 386 F.3d 829, 833 (7th Cir. 2004);15 U.S.C. § 1692k. The potential statutory damages in this case are alleged to be less than seventy cents per plaintiff, while the actual damages resulting from the payment of

program fees is allegedly $160 per plaintiff.[2] The court agrees with American Corrective that the record at this point indicates the primary relief at issue is actual damages, and determining such relief will depend on some individualized analysis that destroys the class cohesiveness that 23(b)(2) certification presumes. *See, e.g.*, Lemon v. International Union of Operating Engineers, Local No.,139, 216 F.3d at 581.

The plaintiffs cite several cases in which courts have certified 23(b)(2) classes of debtors seeking declaratory and monetary relief under the FDCPA, but in each of these cases, the plaintiffs sought only statutory damages, which could be calculated on a class-wide basis. *See* Borcherding-Dittloff v. Transworld Systems, Inc., 185 F.R.D. 558, 566 (W.D. Wis. 1999) ("[T]he potential monetary award would be readily calculable for the entire class. Each member would receive an equal share of the total recovery ... there is no risk that unique damage issues would arise among class members."); Swanson v. Mid Am, Inc., 186 F.R.D. 665, 669 (M.D. Fla. 1999) (FDCPA action certified under 23(b)(2) because the court found the plaintiff's damages "flow directly from the notice sent by Defendants ... [and so] monetary damages do not predominate over declaratory relief"); Young v. Meyer & Njus, P.A., 183 F.R.D. 231, 234-235 (N.D. Ill. 1998) ("He seeks a declaration that the form collection letter and the process of verification violate the FDCPA and requests statutory damages. The declaratory judgment is an integral

---

[2] American Corrective says its 2003 net worth was $726,528, and the plaintiffs don't offer any evidence to contradict this assertion.

part of the relief for the entire class. If Mr. Young prevails on the issue of liability, statutory damages will flow directly from the declaratory judgment and are readily calculable on a classwide basis."); <u>Gammon v. GC Services Ltd. Partnership</u>,162 F.R.D. at 321 (in suit seeking injunctive relief, declaratory relief, and statutory damages, court held that if "Gammon prevails on the issue of liability, statutory damages would flow directly from the declaratory judgment and are readily calculable on a classwide basis."); <u>Blum v. Fisher and Fisher</u>, 1997 WL 433630 (N.D. Ill. 1997) (certifying a hybrid class where statutory damages could be determined using a "formula calculation"). The plaintiffs in this case seek  actual damages for those members of the class who paid the program fees, and such monetary loss doesn't flow from the requested declaratory relief. <u>Washington v. CSC Credit Services Inc.</u>, 199 F.3d 263, 269-270 (5th Cir. 2000); <u>Liles v. American Corrective Counseling Services, Inc.</u>, 231 F.R.D. 565, 575 (S.D. Iowa 2005).

Because the plaintiffs' request for monetary relief isn't incidental, the court has the option of certifying the class under Rule 23(b)(3) for all proceedings or divided certification. *See* <u>Lemon v. International Union of Operating Engineers, Local No.,139</u>, 216 F.3d at 581 (citing <u>Jefferson v. Ingersoll International Inc.</u>, 195 F.3d at 898-899).[3] The court should "endeavor to select the most appropriate subsection, not just the first linguistically applicable one in the list." <u>Jefferson v. Ingersoll International Inc.</u>, 195 F.3d at 898.

---

[3] A third option, not advocated here, is to certify the class under Rule 23(b)(2) for all claims, but mandate personal notice to all class members and the opportunity to opt out, pursuant to the court's authority under Rules 23(d)(2) and 23(d)(5). <u>Id.</u>

Rule 23(b)(3) allows class certification when (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 676 (7th Cir. 2001). The court looks beyond the pleadings to analyze the claims, defenses, relevant facts, and applicable substantive law that may be necessary in order to determine whether certification is appropriate. Castano v. American Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996). The defendants say certification isn't appropriate under 23(b)(3) because individual issues predominate and certification isn't the superior method of adjudication. The court doesn't agree.

Several operative facts are common to all members of the proposed class as a result American Corrective's standardized conduct,[4] and a significant legal issue is common to all class members: whether the form collection letters violate the FDCPA.  American Corrective says class certification isn't appropriate since class members seeking actual damages under the FDPCA must make an additional showing that they relied upon the alleged misrepresentations in the decision to pay the program fees. This additional showing, American Corrective says, will require individual hearings and testimonial proof that would predominate the common issue of whether the letters violated the FDCPA. The court doesn't agree.

---

[4] The operative facts common to the class include: (1) each class member received a letter from St. Joseph County Prosecuting Attorney Bad Check Restitution Program via the defendant, (2) that threatened prosecution, and (3) in an attempt to collect monies owed.

Sections 1692e and 1692f are strict liability provisions. <u>Randolph v. IBMS, Inc.</u>, 368 F.3d 726, 728 (2004). The test for determining whether collection letters violate the FDCPA is objective, turning on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer. <u>Turner v. J.V.D.B & Assocs.</u>, 330 F.3d 991, 996 (7th Cir. 2003). A debtor collector who violates the FDCPA is liable for the amount of actual damages the violation has caused, *see* 15 U.S.C. § 1692k, so a determination of whether individual class members actually relied upon the alleged misrepresentation is irrelevant for liability purposes. *See, e.g.,* <u>Keele v. Wexler</u>, 149 F.3d 589, 593-594 (7th Cir. 1998) ("In other words, the [FDCPA] is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not. So long as Keele's and the class members' injuries arose out of the same violative conduct, she may properly represent classes A and B ... [w]e must focus on the debt collector's misconduct, not whether the debt is valid or, as here, whether the consumer has paid an invalid debt."); <u>United States v. National Financial Services, Inc.</u>, 98 F.3d 131, 139 (4th Cir. 1996) ("the test is the capacity of the statement to mislead; evidence of actual deception is unnecessary"). While individual issues may exist in determining the damages suffered, "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." <u>Holmes v. Pension Plan of Bethlehem Steel Corp.</u>, 213 F.3d 124, 137 (3rd Cir. 2000) (quoting <u>Bogosian v. Gulf Oil Corp.</u>, 561

9

F.2d 434, 456 (3rd Cir. 1977)); *see also* In re Visa Check / MasterMoney Antitrust Litigation, 280 F.3d 124, 139  (2nd Cir. 2001) ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."); Bertulli v. Indep. Ass'n of Cont'l Pilots, 242 F.3d 290, 298 (5th Cir. 2001) (affirming district court's determination that common issues predominated, stating that "[a]lthough calculating damages will require some individualized determinations, it appears that virtually every issue prior to damages is a common issue"); FED. R. CIV. P. RULE 23(b)(3) ADVISORY COMMITTEE'S NOTES ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of damages suffered by the individuals within the class."). The significant issue of whether the collection letters violate the FDCPA outweighs the individualized damage issues. *See, e.g.,* Liles v. American Corrective Counseling Services, Inc., 231 F.R.D. at 575 (FDCPA action challenging a bad check diversion program; the court held that "[a]lthough actual damages must be determined on an individual basis, this fact does not override the overwhelming predominance of common issues.").

The plaintiffs must also show a class action is superior to other available methods for the fair and efficient adjudication of this controversy. One factor often disputed in the superiority analysis (as it is here ) is "the difficulties likely to be encountered in the management of a class action." FED. R. CIV. P. 23(b)(3)(D).

Class actions have been found superior when potential damages might be too insignificant to provide class members with incentive to pursue a claim individually, and where potential plaintiffs might not be aware of their rights  or be able to hire competent counsel to protect these rights. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617 (1997); Jackson v. National Action Financial Services, Inc., 227 F.R.D. 284, 290 (N.D. Ill. 2005) (certifying FDCPA class action where potential recovery wasn't likely to provide sufficient incentive for members of the proposed class to bring their own claim, and where potential plaintiffs weren't likely aware of their rights under the FDCPA or able to hire competent counsel); Parker v. Risk Management Alternatives, Inc., 206 F.R.D. 211, 213 (N.D. Ill. 2002) (finding class action superior method of adjudication for FDCPA claim because damages too insignificant to provide an incentive for potential plaintiffs to pursue their FDCPA claims individually in court); Sledge v. Sands, 182 F.R.D. 255, 259 (N.D. Ill. 1998) (certifying FDCPA class action). Class treatment is especially appropriate for claims under consumer protection statutes meant to deter abusive collection practices. Amchem Prods. v. Windsor, 521 U.S. at 617;  Mace v. Van Ru Credit Corp.,109 F.3d 338, 344 (7th Cir. 1997); 7AA C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 1780 at 200 (2005) (consideration of policies embodied in underlying statutes relevant to determining superiority of class action ). The FDCPA recognizes the propriety of class actions by providing special damages sections for class actions. *See* 15 U.S.C. §§ 1692.

The plaintiffs haven't submitted any evidence as to whether the potential class members are aware of there rights under the FDCPA, but the damages in this case are estimated at $160 per class member, so the potential recovery for the proposed plaintiffs is unlikely to provide sufficient incentive for members of the proposed class to bring their own claims. *See, e.g.,* <u>Mace v. Van Ru Credit</u>, 109 F.3d at 344; <u>Carroll v. United Compucred Collections, Inc.</u>, 399 F.3d 620, 625-626 (6th Cir. 2005); <u>Jackson v. National Action Financial Services</u>, 227 F.R.D. at 290. The alternative method of resolution is individual lawsuits in most of which litigation costs would dwarf the potential recovery. Such actions would not only prove uneconomical for the potential class members, but an unnecessary burden on the judiciary. *See, e.g.,* <u>Gunnells v. Healthplan Services, Inc.</u>, 348 F.3d 417, 426-427 (4th Cir. 2003).

American Corrective argues that the individual determinations of damages would result in "mini trials," creating an unmanageable class suit. The decision whether a particular action is manageable lies within the discretion of the district court. In support of its argument, American Corrective cites several cases that address the issue of manageability of suits with individualized issues of damages. These cases, however, don't persuade the court that this particular action is unmanageable.

In <u>Trecker v. Manning Implement, Inc.</u>, 73 F.R.D. 554, 560-561 (N.D. Iowa 1976), the court found the disparate nature of the defendants' actions meant the damages assessment would result in separate trials that would be tremendously

time-consuming and costly.  The court noted, however, that its holding would be inapplicable "in certain cases where defendants act as a unified whole," or where "where a tight nucleus of common-behaving defendants have acted in a manner which affects a great number of people in the same way." Id. at 561, 563. American Corrective's uniform conduct in this case allows a general determination of liability, and the mere existence of individual damage questions doesn't automatically preclude class certification as unmanageable. In re Visa Check / MasterMoney Antitrust Litigation, 280 F.3d at 140; Coleman v. Cannon Oil Co., 141 F.R.D. 516, 526-527 (M.D. Ala. 1992).

The court also doesn't see the damages' determination tremendously time consuming. Unlike Rogers v. Coburn Finance Corp. of DeKalb, 53 F.R.D. 182, 183 (N.D. Ga. 1971), in which the court found a class action couldn't be maintained since a liability determination required "the court ... to physically examine several thousand disclosure statements in detail to determine if any of the failures listed above were made," proof of damages in this case will require each member to show that he or she received the defendants' form letter regarding the diversion program and then paid money to American Corrective. All this information can be determined from American Corrective's own data. See Liles v. American Corrective Counseling Services, Inc., 231 F.R.D. at 575.

Finally, American Corrective cites Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc., 339 F.3d 1001, 1012 (8th Cir. 2003), in which the court affirmed the district court's finding that there were individual issues of

damages predominate over the common issues—a related but separate determination from manageability. *See* <u>Simer v. Rios,</u> 661 F.2d at 677. The only potential manageability issue apparent at this point is the determination of actual damages, and "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored, and 'should be the exception rather than the rule.'" <u>In re Visa Check / MasterMoney Antitrust Litigation,</u> 280 F.3d at 140. Because it can be determined from American Corrective's records which proposed class members paid the program fees associated with the diversion program, the court isn't persuaded that this issue is one that cannot be reasonably managed or that outweighs the benefits of handling this case as a class action. *See, e.g.,* <u>Mitchell-Tracey v. United General Title Ins. Co.</u>, 237 F.R.D. 551, 560 (D. Md. 2006). To the extent additional damages issues may arise, the court has several management options, including appointing a magistrate judge or special master to preside over damages proceedings. FED. R. CIV. P. 23(c)(4).

The plaintiffs also seek divided certification in the alternative, with liability to be determined in the first stage under the procedures of Rule 23(b)(2), and damages to be determined in a second stage under the procedures of Rule 23(b)(3). In support of their argument, the plaintiffs cite <u>Schwarm v. Craighead</u>, 233 F.R.D. 655, 663 (E.D. Cal. 2006), where the court certified a divided class, finding that "although plaintiff additionally seeks actual damages and statutory damages pursuant to 15 U.S.C. § 1692(k), the request for injunctive and declaratory relief clearly predominates over the claim damages" since "[u]nder the

14

hybrid class proposed by plaintiff, the monetary relief sought by Rule 23(b)(2) is restricted to statutory damages [and] [s]tatutory damages under the FDCPA are limited in class actions to one percent of the defendants' net worth and divided between all class members." Even were such certification permissible, the court isn't persuaded that certification 23(b) is the most appropriate subsection for this case.

Unlike Schwarm v. Craighead, the plaintiffs' proposed class action seeks both actual and statutory damages under the FDCPA. *Compare* DOCKET #2 CIVIL CAUSE 2:05-CV-1304 (E.D. Cal. 2005) *and* DOCKET # 29 CIVIL CAUSE 3:05-CV-434 (N.D. Ind. 2005). As discussed, the predominate compensatory battleground in this case is the actual damages that have resulted from American Corrective's alleged violation of the statute, and when "substantial damages have been sought, the most appropriate approach is that of Rule 23(b)(3), because it allows notice and an opportunity to opt out." Jefferson v. Ingersoll International Inc., 195 F.3d at 898. In any event, certification is maintainable under 23(b)(3), so the court needn't delve any further into the realm of divided certification. In re Visa Check/Master Money Antitrust Litigation, 280 F.3d at 147 ("Once a court has found that a class action is maintainable under any single category [of Rule 23(b)], there is no necessity of showing that it may also be brought under any other."); *see also* Jefferson v. Ingersoll International Inc., 195 F.3d at 898 ("Rule 23(b) begins by saying that an action 'may' be maintained as a class action when the

prerequisites of subdivision (a) and a part of subdivision (b) have been satisfied; it does not say that the class must be certified under the first matching section.").

STATE LAW CLAIMS

The plaintiffs define the proposed class in terms of their FDCPA claim, but they also allege claims for conversion and misrepresentation, so the court must determine whether these additional claims should be certified for class action treatment. *See* FED. R. CIV. P. 23(c)(4); *see also* Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 976 (5th Cir. 2000) ("To determine whether damages predominate, a court should certify a class on a claim-by-claim basis, treating each claim individually and certifying the class with respect to only those claims for which certification is appropriate."); Gunnells v. Healthplan Services, Inc., 348 F.3d at 417 (4th Cir. 2003) ("courts should take full advantage of the provision in subsection (c)(4) permitting class treatment of separate issues in the case…if [an] action includes multiple claims, one or more of which might qualify as a certifiable class claim…); Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues … ").

American Corrective says the conversion claim shouldn't be certified because individual issues that arise in resolving these claims outweigh the issues

16

common to the class.[5] The court agrees. To determine whether questions of law or fact common to the members of the class predominate over any questions affecting only individual members, the court must identify the substantive elements of plaintiffs' cause of action and inquire into the proof necessary for the various elements. <u>Simer v. Rios</u>, 661 F.2d at 672. "In order to maintain an action for conversion, the plaintiff[s] must establish the appropriation of personal property by another for that party's own use and benefit in exclusion and defiance of the owner's rights." <u>Shourek v. Stirling</u>, 621 N.E.2d 1107, 1109 (Ind.1993). "[M]oney may be the subject of a conversion action only if it is 'a determinate sum with which the defendant was entrusted to apply to a certain purpose.' " <u>Tobin v. Ruman</u>, 819 N.E.2d 78, 89 (Ind. Ct. App. 2004) (citing <u>Huff v. Biomet, Inc.</u>, 654 N.E.2d 830, 836 (Ind. Ct. App.1995)).

The plaintiffs' conversion theory is that proposed class members sent payment to the American Corrective to cover certain obligations (the check amount, protest fees, and/or service fees), and American Corrective engaged in unauthorized control over those payments when it used portions of that payment without the class members' knowledge for other costs associated with the check diversion program (American Corrective's own fees). They say it can be inferred from the amounts paid that certain class members, like Ms. Hamilton, intended their payment to only cover certain obligations. Even if this is true, the court

---

[5] The plaintiffs seek monetary damages as a result of the American Corrective's alleged conversion and misrepresentation, *see* I.C. § 34-24-3-2 and § 35-43-5-5, so the court doesn't consider this claim for certification under Rule 23(b)(2).

cannot infer which obligations they intended their money to cover and which obligations they didn't. Such liability determinations will require individual and fact-intensive inquiries, so class certification of the plaintiffs' conversion claims under Rule 23(b)(3) is improper. *See, e.g.,* Simer v. Rios, 661 F.2d at 672; *see also* Oshana v. Coca-Cola Bottling Co., 225 F.R.D. 575, 584-585 (N.D. Ill. 2005). The court declines to certify the plaintiffs conversion claims.

The plaintiffs also allege that American Corrective fraudulently and negligently misrepresented that it was entitled to collect fees in excess of those permitted by law. American Corrective says the misrepresentation claims class shouldn't be certified because (1) the named representatives cannot show typicality or adequacy of representation, and (2) determining American Corrective's liability would require an examination of reliance evidence, which is an individual and fact-intensive determination. The court doesn't agree.

American Corrective says the named representatives' misrepresentation claims aren't typical of the proposed class, nor can they adequately represent the class because neither Ms. Hamilton nor Mr. Wright was able to identify a misrepresentation in the collection letters at the time of his or her deposition. American Corrective argues these "admissions" would subject the representatives to an unique defense at trial.  Ms. Hamilton and Mr. Wright both testified that they paid the program fees based upon statements made in the collection letters sent to all class members, so to the extent these statements aren't misrepresentations, or the named representatives didn't rely on them, these

18

defenses aren't unique to the plaintiffs. *Compare* J.H. Cohn & Co. v. American Appraisal Associates, Inc., 628 F.2d 994, 998-999 (7th Cir. 1980) (court held that the defendants had a defense peculiar to the named plaintiff because the named representative was a sophisticated investor and wouldn't be as justified in relying on material misrepresentations as other purchasers of American Appraisal's stock) *with* Mendez v. M.R.S. Associates, 2004 WL 1745779 (N.D. Ill. 2004) (distinguishing J.H. Cohn & Co. v. American Appraisal Associates, Inc. because the plaintiff's understanding of the letter, or lack thereof, didn't create peculiar defenses to her FDCPA claim that would cast a cloud on her typicality). Moreover, the determination of whether American Corrective sought fees contrary to law is a legal conclusion, and the fact that the named representatives didn't know whether the fees sought by American Corrective were contrary to law at the time of their deposition doesn't make them inadequate to represent the class. *See* Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A., 657 F.2d 890, 896 (7th Cir. 1981). The named representatives' claims are typical of the proposed class whom they adequately represent, and because their claims, like those of the absent class members, arise from the standard collection letter received by all members, the commonality requirement of Rule 23(a) is also met. *See* Rosario v. Livaditis, 963 F.2d at 1018. The named plaintiffs and the proposed class satisfy the requirements of Rule 23(a) as to the misrepresentation claims.

The plaintiffs say certification of their misrepresentation claims is appropriate because individual proof of reliance isn't required since reliance can

be inferred. The court agrees. *See, e.g.,* <u>Smith v. MCI Telecommunications Corp.</u>, 124 F.R.D. 665, 679 (D. Kan.1989) (finding the fact that the proposed class members had agreed to employment by the defendant demonstrated that they had relied upon the allegedly fraudulent compensation promises, so the question of class members' reliance was an "objective inquiry common to the entire proposed class."). American Corrective cites <u>Buford v. H & R Block, Inc.</u>, 168 F.R.D. 340, 356 (S.D. GA. 1996) for the proposition that the determination of reliance in fraud cases prevents certification. There the plaintiffs alleged that the defendants had fraudulently misrepresented a refund anticipation loan program. The court recognized that reliance could be inferred in some cases, but declined to presume that each member of the proposed class believed that she received a direct refund rather than a high interest loan because the class members' state of mind couldn't logically be inferred from the record. <u>Buford v. H & R Block, Inc.</u>, 168 F.R.D. at 359. Like <u>Smith v. MCI</u>, it may be logical here to presume class members' reliance because it is inconceivable that the debtors would've paid more than they owed on their checks unless they were relying on statements that additional program fees were needed to avoid criminal prosecution. <u>Peterson v. H & R Block Tax Services, Inc.</u>, 174 F.R.D. 78, 84-85 (N.D. Ill. 1997) ("[C]ourts will presume class members' reliance when it is logical to do so or when the complaint's allegations make reliance apparent."). The issue of misrepresentation therefore presents a common, rather than an individualized, question, and doesn't prevent certification.

The questions of law and fact common to the members of the class with regard to the misrepresentation claims predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this claim. Certification is appropriate under Rule 23(b)(3).

CONCLUSION

For the foregoing reasons, the plaintiffs' motion for class certification [Doc. No. 33 ] is GRANTED IN PART and DENIED IN PART. The motion is granted in so far as the court certifies for class treatment the plaintiffs' FDCPA (Count 2) and misrepresentation (Counts 5 and 6) claims. The motion is denied in so far as the court declines to certify the plaintiffs' conversion claims for class treatment (Counts 3 and 4).

The court certifies the following class: All persons in the state of Indiana who were sent a letter or letters by American Corrective purporting to be from an Indiana governmental bad check restitution program in an attempt to recover a dishonored check which, according to the nature of the creditor or the debt, or the records of the payee or American Corrective, was written for personal, family, or household purposes, which was not returned as undelivered by the U.S. Post Office, during the one year prior to the filing of the complaint through the date of class certification and paid money to American Corrective.

Maria Hamilton and Damon Wright shall represent the class, and the court appoints O. Randolph Bragg, Paul Arons, and Judith Fox as class counsel. Class counsel shall file with the court a proposed form of class notice and related opt-out forms meeting the requirements of Federal Rule of Civil Procedure 23(c)(2) within 15 days of this order. American Corrective may file objections to the proposed form of notice within 7 days of that filling.

SO ORDERED.

Entered:   February 14, 2007

_____/s/ Robert L. Miller, Jr._____
Chief Judge
United States District Court